Notice: This opinion is subject to formal revision before publication in the Federal Reporter or U.S.App.D.C. Reports. Users are requested to notify the Clerk of any formal errors in order that corrections may be made before the bound volumes go to press.

# United States Court of Appeals

FOR THE DISTRICT OF COLUMBIA CIRCUIT

—————

Argued April 19, 2004　　　　　Decided June 18, 2004

No. 03-1210

JOHN A. FRANCISCO,
APPELLANT

v.

COMMISSIONER OF INTERNAL REVENUE SERVICE,
APPELLEE

—————

Appeal from the United States Tax Court
(No. IRS–7670–00)

—————

*R. Todd Luoma* argued the cause for appellant. With him on the briefs was *Daniel R. King*.

*Teresa E. McLaughlin*, Attorney, U.S. Department of Justice, argued the cause for appellee. With her on the brief was *Michael J. Haungs*, Attorney.

Before: SENTELLE, ROGERS and GARLAND, *Circuit Judges*.

Opinion for the Court filed by *Circuit Judge* SENTELLE.

—————

Bills of costs must be filed within 14 days after entry of judgment. The court looks with disfavor upon motions to file bills of costs out of time.

SENTELLE, *Circuit Judge*: John A. Francisco ("Francisco" or "taxpayer"), a citizen of the United States and resident of American Samoa, appeals from a judgment of the United States Tax Court upholding in large part an Internal Revenue Service deficiency notice. The notice assessed Francisco for taxes on earnings he was paid in American Samoa but which he earned while working on a fishing boat in international waters. For the reasons more fully set forth below, we affirm the judgment of the Tax Court.

## I. BACKGROUND

In tax years 1995, 1996, and 1997, Francisco, a United States citizen, resided in American Samoa, a 76-square-mile U.S. territory in the South Pacific. During those tax years, he was employed as chief engineer on a tuna fishing boat, the M.V. Sea Encounter based in American Samoa, but operating principally in international waters. His employer, DeSilva Sea Encounter Corporation ("DeSilva"), had a contract with Van Kamp Seafood Company Inc. under which it sold the Encounter's entire catch to Van Kamp's cannery in American Samoa. While Van Kamp had the right to refuse fish that were not up to standard, its refusal rate apparently ran no higher than approximately 2% of the catch. Francisco's pay, like all members of the vessel's crew, was based on a percentage of the payment of Van Kamp to DeSilva, and in his case amounted to $30 for each ton Van Kamp accepted.

Francisco filed tax returns for each of the years in question, reporting wages and salary respectively for 1995 of $111,330.00, 1996 of $179,010.00 and 1997 of $148,188.00, all of which derived from his work on the Encounter. Francisco claimed a 100% exclusion of the income under § 931 of the Internal Revenue Code ("Code"). That section governs income derived from "specified possessions of the United States," including American Samoa. It provides "a general rule" covering any individual taxpayer "who is a bona fide resident of a specified possession during the entire taxable year," and provides that for such a taxpayer, "gross income shall not include (1) income derived from sources within any

specified possession, and (2) income effectively connected with the conduct of a trade or business by such individual within any specified possession." 26 U.S.C. § 931(a).

The Commissioner of Internal Revenue sent the taxpayer a notice of deficiency pursuant to 26 U.S.C. § 6212 disallowing the entire claimed exclusion, on the theory that the earnings were governed by § 863(d) of the Code, rather than § 931 as asserted by the taxpayer. Section 863(d) governs income source rules "for space and certain ocean activities." It provides that income "derived by a United States person" from an ocean activity "shall be sourced in the United States." 26 U.S.C. § 863(d)(1)(A). That section defines "ocean activity" as "any activity conducted on or under water not within the jurisdiction as recognized by the United States" of a foreign country, possession of the United States, or the United States. *Id.* § 863(d)(2)(A)(ii). Operating under the theory that all of Francisco's income from his employment on the fishing vessel fell within the terms of § 863(d), the Commission disallowed the entire exclusion, and asserted deficiencies for each of the tax years under review.

The taxpayer filed a petition for review of the Commissioner's determination with the United States Tax Court contesting the Commissioner's determinations. The Tax Court entered its decision, for the most part upholding the position of the Commissioner. *Francisco v. Commissioner*, 119 T.C. 317 (2002). In a divided opinion,[1] that court held that § 863 governed the portion of taxpayer's earnings attributable to his activity on the vessel while it was in international waters.

---

[1] Judge Maurice Foley dissented from the court's opinion expressing a view that § 931 was inapplicable. 119 T.C. at 331 (Foley, J., dissenting). In Judge Foley's view, because that section allowed for exclusion based on a source determination "made under regulations prescribed by the Secretary," § 931(d)(2), and because the Secretary had never issued any such regulations, he would have held the statute incapable of application. Neither party in this appeal asserts Judge Foley's theory, and we have no occasion to pass upon the question it raises.

Because he performed some duties in port, the Tax Court prorated his liability, holding that § 931 in fact did govern that portion of his earnings attributable to activities actually occurring within American Samoa. By far the largest part of taxpayer's work time occurred in international waters and the bulk of his exclusion was therefore disallowed. The taxpayer filed the present appeal from that judgment.

## II. ANALYSIS

As is, we think, evident from the discussion above, the question before us is straightforward. So is its resolution.

Section 863(d)(1)(A) provides: "Income derived from a[n] ocean activity" as defined therein shall, for a "United States person . . . be sourced in the United States." Section 7701(a)(30)(A) of the Code defines a "United States person" as including "a citizen or resident of the United States." The parties agree that Francisco is a citizen of the United States. His residence in the specified possession is immaterial to the statutory definition of a United States person, which would include him as a citizen even if he lived in a foreign country. The international waters in which he fished during the tax years fit precisely the statutory description of "water not within the . . . jurisdiction . . . of a foreign country, possession of the United States, or the United States." § 863(d)(2)(A)(ii). Therefore, the Tax Court properly held § 863(d) to be the section governing Francisco's tax liability.

Francisco argues that the waters within which he fished are not governed by § 863(d). He claims that for purposes of the Tax Code, those waters should be considered as being within the jurisdiction of a possession of the United States. He bases that argument on the American Samoa Code, the governing law of the possession, which adopts a so-called "mirror image tax code." Under a mirror-image code, the possession's statute adopts the United States Internal Revenue Code but replaces "the United States," where necessary, with "American Samoa." Thus, the possession, like the United States, taxes worldwide the income derived from ocean

sources of its taxable "persons." From this, taxpayer reasons that the international waters upon which he fished were within the "tax jurisdiction" of the United States' possession and therefore outside the reach of § 863. We have little trouble rejecting this argument.

If taxpayer's interpretation were correct, § 863(d)(2)(A)(ii) would be a meaningless section covering no water whatsoever. If a government's claim to tax is sufficient to meet the meaning of "jurisdiction" in that subsection, then no water falls within its reach. Since § 863(d) purports to reach all water "not within the jurisdiction . . . of the United States" or its possessions, and since the United States, along with any possession having a mirror-image code, asserts the authority to tax earnings from activities on all such waters, taxpayer's reasoning would mean that § 863(d)(2)(A)(ii) could cover no waters. The section reaches water not within the jurisdiction of the United States. The section purports to tax all waters in the world except insofar as they fall within the jurisdiction of the United States or other specified governments. Under taxpayer's reasoning that leaves no waters to be covered by the section. This argument does not pass the straight-face test.

Taxpayer makes one more attempt at bringing his earnings under § 931 so as to source them in American Samoa rather than under § 863. He stresses that § 931(a)(2) provides for the exclusion of "income effectively connected with the conduct of a trade or business by [an] individual within any specified possession," such as American Samoa. 26 U.S.C. § 931(a)(2). He contends that his earnings fall within the meaning of that section.

As did the Tax Court, we reject that proposition. In the absence of a statutory or regulatory definition of income "effectively connected" with the conduct of a trade or business in a specified possession, the Tax Court, like the parties before it, sensibly looked to parallel provisions of the Code, specifically § 864(c)(4)(B), which governs whether income from sources outside the United States qualifies as being "effectively connected" to the conduct of a trade or business

within the United States. That section provides that a taxpayer qualifies for such a determination only where he "has an office or other fixed place of business within the United States to which such income, gain, or loss is attributable." *Id*. Francisco has never claimed any such office or fixed place of business in American Samoa.

Section 864(c)(4)(B) provides further guidance as to what income is to "be treated as effectively connected with the conduct of a trade or business within the United States." It specifies that such income:

> (i) consists of rents or royalties for the use of or for the privilege of using intangible property described in section 862(a)(4) derived in the active conduct of such trade or business;

> (ii) consists of dividends or interest, and either is derived in the active conduct of a banking, financing, or similar business within the United States or is received by a corporation the principal business of which is trading in stocks or securities for its own account; or

> (iii) is derived from the sale or exchange (outside the United States) through such office or other fixed place of business or personal property described in section 1221(a)(1), except that this clause shall not apply if the property is sold or exchanged for use, consumption, or disposition outside the United States and an office or other fixed place or business of the taxpayer in a foreign country participated materially in such sale.

26 U.S.C. § 864(c)(4)(B).

Conspicuously, that section does not include any reference to earnings from personal services. Like the Tax Court, we do not find it necessary to hold that a tax provision dealing with income "effectively connected with the conduct of a trade or business" could never include earnings from personal services. However, the taxpayer has fallen far short of convincing us that it covers his earnings in this case. Given the other requirements of § 864(c)(4)(B), and the silence of the statute on the specific point, taxpayer's argument falls far short of overcoming the clear compelling language of § 863.

We therefore affirm the holding of the United States Tax Court that the earnings from fishing in international waters are included in Francisco's taxable gross income under 26 U.S.C. § 863, not excluded under 26 U.S.C. § 931.[2]

### III. Conclusion

For the reasons set forth above, we affirm the judgment of the United States Tax Court.

---

[2] While not essential to our decision, we note that taxpayer's American Samoan return claims a complete exclusion from something called a "fisherman's contract exclusion." Thus, problems of double taxation or questions of the extent of allowable tax credits should not arise.